William S.W. FRANCIS, Appellant,

v.

Johnny JOHNSON, d/b/a Johnny Johnson Backhoe Service and Ramon Garcia, Appellees.

No. 08–89–00091–CV.

Court of Appeals of Texas, El Paso.

Aug. 30, 1989.

Rehearing Denied Oct. 18, 1989.

Henry Stollenwerck, Dallas, for appellant.

Richard E. Green, Green & Ryan, Clyde Bracken, Bracken and Hummert, Dallas, for appellees.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

The Appellant, William S.W. Francis ("Francis"), sued the Appellees, Ramon Garcia ("Garcia"), and Johnny Johnson, d/b/a Johnny Johnson Backhoe Service ("Johnson"), for injuries received while working for his employer, Continental Mechanical Corporation ("Continental") resulting from the alleged negligence of Garcia and his employer, Johnson. Francis brings this appeal from orders granting the respective motions for summary judgment of Johnson and Garcia. We affirm.

Continental had the plumbing subcontract on the Roberts addition to Baylor Hospital in Dallas. As a part of its contractual obligation, Continental was required to install an underground sanitary or sewer line and a storm line from the building to the street where they would be tied into the city lines. Continental called Johnson and ordered a backhoe and an operator for the purpose of digging the necessary trench. The backhoe was delivered to the job site and Garcia was sent by Johnson to operate the machinery. As a preliminary task, the Continental employees dug two holes so that they could set up their instrument and shoot the elevations from the building to the property line in order to determine the amount of "fall"

that had to be put into the line from point to point. The hole near the street was about six feet deep and was wider than normal, approximately four feet wide, because they had been searching for the city lines. According to Continental's job superintendent, he had directly and through his foreman instructed Garcia, a skilled operator, to backfill the hole before trenching through it to avoid the possibility of the sides of the hole caving in on his men while they were in the trench installing the pipe. Garcia commenced digging the trench at the building and had completed it at the street end. He had apparently trenched through the hole without having backfilled as he had been instructed, by "breaching the hole" through the use of the outriggers on the backhoe, thus loosening the material around the hole. He had pulled the backhoe out of the trench and parked by the side of the hole or out on the street when the side of the hole caved in on Francis and another Continental employee, who were working in the hole, injuring them.

In his petition, Francis had alleged that the occurrence resulting in his injuries had been caused by Garcia's negligent acts and omissions and that at the time of the occurrence, Garcia was the employee of Johnson and was acting within the scope of his employment. Although the take nothing summary judgments were obtained at different times, Garcia having initially suffered a default judgment against him and having thereafter been granted a new trial, the grounds for the two motions for summary judgments were essentially the same: that at the time of the occurrence in question, Garcia was the special or borrowed employee of Continental and, therefore, Francis' cause of action would not lie against Johnson under the theory of Respondeat Superior, or against Garcia as a co-employee, under the exclusive remedy section (Section 3) of Article 8306 of the Workers' Compensation Act.

Francis brings three points of error, all to the effect that the trial court erred in granting the two summary judgments because Johnson and Garcia failed in their summary judgment proof to establish as a

matter of law that Garcia was the borrowed employee of Continental and there remains a fact issue on that question.

■ When the validity of a summary judgment, granted on a defendant's motion, is in issue, the question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970); *Griffin v. Rowden*, 654 S.W.2d 435 (Tex. 1983). The burden is on the movant to establish the absence of a genuine issue of a material fact. In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985). Thus, the burden in this case was and is on Johnson and Garcia to establish, on the basis of the summary judgment proof properly before the court, that there is no genuine issue on the question of whether or not Garcia at the time of the occurrence was the special or borrowed employee of Continental.

Attached to Johnson's original Motion for Summary Judgment were affidavits of Garcia and Johnson. Hearing on this motion was held on April 2, 1987. Leave, having been obtained from the court, Johnson filed a trial amendment to the motion on April 13, 1987, by means of which he placed his reliance not only on the aforementioned affidavits but also on the affidavit of Jackie Roberts, an employee of Continental, and the depositions of Roberts, Garcia and Johnson, which had been taken prior to the summary judgment hearing and were apparently considered by the trial court without objection.

According to Johnson's deposition, if somebody needing a backhoe or other similar piece of equipment called, Johnson would send out the requested machinery with a properly trained operator, for both of which he made a standard charge. He would then pay the operator once a week for the number of hours he put in. In this case, someone with Continental called Johnson's dispatcher and requested that Garcia, along with a backhoe, be sent to the Baylor Hospital job. There was no written contract between Johnson and Continental, and he personally did not go on the job or exercise control over Garcia's work and performance.

■ The critical inquiry is whether Garcia was a special or loaned employee of Continental during the time Francis was injured, and in order to answer that inquiry, it is necessary to determine which employer had the right of control over Garcia's performance of his services. *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327, 333 (Tex.1968); *Hilgenberg v. Elam*, 145 Tex. 437, 198 S.W.2d 94 (1946). In *Robinson*, Justice Greenhill quoted from *Producers Chemical Company v. McKay*, 366 S.W.2d 220, 225, (Tex.1963), wherein Chief Justice Calvert said:

> Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence...."

He went on to consider the situation where there was no written contract between the parties, or the contract was silent on the right of control:

In such cases right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc. Sometimes, as in *Hilgenberg v. Elam*, 145 Tex. 437, 198 S.W.2d 94, the only reasonable inference to be drawn from the facts and circumstances in evidence is that right of control of the manner in which the employee performs his duties is surrendered to the special employer. Again, as in *Insuror's Indemnity & Insurance Co. v. Pridgen*, 148 Tex. 219, 223 S.W.2d 217, the only reasonable inference to be drawn is that the general employer has retained right of control. *Id.* 366 S.W.2d at 226.

█ Garcia, in his deposition, states that he was sent to Baylor Hospital by his employer, Johnny Johnson Backhoe Service. According to the depositions of both Garcia and Roberts, Garcia reported to Continental's job superintendent, Jackie Roberts, who told him generally what needed to be done. Roberts then took Garcia to one of his foremen, Morris Smart, who in turn gave him specific instructions on the location and approximate depth of the trench or ditch. Roberts had previously given his foreman specific instructions to give the operator on where to start the ditch and on backfilling the big hole before digging through it. It was Continental's responsibility to make sure the ditch was dug properly. If the operator was not good at operating the backhoe, the superintendent would "generally run him off." In other words, Continental had the right to have the operator replaced if his performance did not meet Continental's requirements. Garcia might suggest another way of digging the trench, but when the foreman told him how they were going to do it, that's what he did. "When we dig the ditch, we dig it like the employer who is paying us to do it, Continental Mechanical. We dig it like they say dig it." Even when he knew

it was dangerous for the men to be in the ditch using a vibrator to compact the sand around the pipe, he just did what he was told. He was told to hurry and dig. When not trenching and backfilling, Garcia, under the direction of Continental employees, utilized the backhoe to perform other tasks for Continental, such as unloading and moving pipe. As Continental's superintendent, Roberts was in control of the whole project. He expected his instructions and those of his foremen to be followed.

All of the evidence found in the summary judgment proof, and the reasonable inferences from such evidence, support the fact that Continental had the right to control Garcia in the performance of his services. Francis, in opposition to the motions, points to no evidence which would give rise to a reasonable inference that Johnson retained any right to control Garcia's performance on the job. Short of Continental putting one of its own employees in the operator's seat, it is hard to imagine a situation in which Continental could have exerted more control and direction over Garcia's performance in digging the trench. The fact that he failed to follow his instructions on backfilling the hole before trenching through it does not create an inference that he remained under Johnson's control.

█ Francis argues, in effect, that none of the Continental employees had the right to control Garcia in his operation of the backhoe. By this he apparently means that Garcia, as a skilled operator, had virtually complete control over the machine itself. This would be important had the injury occurred as a direct result of the manner in which Garcia operated the machine, e.g., if he had struck Francis with the backhoe arm or the bucket, but here the injury occurred from a cave-in of dirt allegedly as a result of Garcia having negligently dug the trench or failed to backfill, contrary to the instructions of Continental's superintendent and foreman. In support of his argument, Francis cites *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327 (Tex. 1968), and *Insurors Indemnity & Insurance Co. v. Pridgen*, 223 S.W.2d 217 (Tex. 1949). In *Pridgen*, the operator of the

dragline operated it in such a manner that the boom or lifting cable came into contact with a powerline, electrocuting the deceased who was standing on the ground holding the cable. Moreover, the alleged special employer in *Pridgen*, after giving the operator of the dragline general instructions on the tasks to be performed, retired from the scene, leaving the operator and the helper on their own. In *Robinson*, the Supreme Court agreed with the trial court and the Court of Civil Appeals that there was evidence both ways, and thus a fact issue, on whether the truck driver remained under the control of his general employer, Robinson, in an unloading operation, or had come under the control of the employees of the alleged special employer.

We conclude from a review of all of the summary judgment evidence and the authorities, that as a matter of law at the time of the occurrence, Garcia was the special employee or borrowed servant of Continental with respect to the manner in which the trench was dug and therefore Johnson, who had no control over the specifics of the task, could not be liable for Garcia's alleged negligence, and Garcia could not be personally liable to his fellow servant, Francis, under Article 8306, sec. 3 of the Texas Workers' Compensation Act.

The trial court was correct in granting the summary judgments in favor of Johnson and Garcia and those judgments are hereby affirmed.